UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| GUILLERMINA GARCIA DE CHAVEZ,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>**Acting Commissioner of the Social<br>Security Administration,**<br><br>        Defendant. | Case No. ED CV 12-0654 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"),[1] denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

On December 10, 2008, plaintiff, aged 50, filed applications for disability insurance and SSI benefits alleging that she had been disabled since October 1, 2006. [JS 2; Administrative Record ("AR") 59-60, 151,

---

[1] Carolyn W. Colvin, who became the Acting Commissioner on February 14, 2013, is substituted for her predecessor Michael J. Astrue. See Fed. R. Civ. P. 25(d).

159].[2] In a November 9, 2010 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of rheumatoid arthritis, bilateral carpal tunnel syndrome, and fibromyalgia. [AR 17, 21]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of light work. [AR 17]. Specifically, the ALJ determined that plaintiff can lift and carry ten pounds frequently and twenty pounds occasionally with frequent fine manipulation with her hands bilaterally. [AR 17]. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was not disabled because her RFC did not preclude her from performing her past relevant work as a hairstylist and manager of a beauty salon. [AR 20-21].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ's evaluation of the medical evidence is not supported by substantial evidence because he improperly adopted the opinions of examining physician Khyber Zaffarkhan, D.O.,

---

[2] It appears from the record that plaintiff later amended her alleged onset date to June 1, 2008. [See AR 14, 29-30, 53-54].

2

and the state agency non-examining physicians in assessing plaintiff's RFC. [JS 4-6]. Plaintiff further maintains that the ALJ also failed to provide specific and legitimate reasons for rejecting the opinion of plaintiff's treating rheumatologist Joanne Kang, M.D. [JS 6-7].

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. On the other hand, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam), cert. denied, 519 U.S. 1113 (1997).

On February 7, 2009, plaintiff underwent a complete orthopedic consultation with Dr. Zaffarkhan at the Commissioner's request. [AR 216-221]. Dr. Zaffarkhan took a history and conducted an orthopedic evaluation, but did not review any medical records. [AR 216-220]. He diagnosed bilateral carpal tunnel syndrome and hypertensive urgency. [AR 220]. Dr. Zaffarkhan opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and that she could frequently do fine manipulation with both hands. [AR 221].

On March 9, 2009, a nonexamining state agency physician completed a physical RFC assessment form and found plaintiff capable of light work. [AR 223-230]. This determination was affirmed by another nonexamining physician on May 5, 2009. [AR 231-232].

On August 20, 2010, Dr. Kang, plaintiff's treating physician, wrote the following on a prescription order: "[Patient] has a diagnosis of Rheumatoid arthritis. It would be very difficult for her to work as a hairdresser. Please consider permanent disability for Ms. Chavez." [AR 352].

In assessing plaintiff's RFC, the ALJ said that she gave "great weight" to Dr. Zaffarkhan's opinion and "weight" to the nonexamining physicians opinions. [AR 20]. She said that she gave "little weight" to Dr. Kang's "disability statement[.]" [AR 20]. Specifically, the ALJ determined that because Dr. Kang gave

an opinion on an issue reserved to the Commissioner, her opinion was not entitled to controlling weight or any special significance. [AR 20]. Additionally, the ALJ concluded that Dr. Kang's statement was "not supported by the objective medical evidence, and [did] not provide conditions, symptoms, or functional limitations of" plaintiff. [AR 20].

The ALJ provided specific and legitimate reasons for rejecting Dr. Kang's conclusory statement that it would be very difficult for plaintiff to work as a hairdresser. [See AR 20, 352]. As an initial matter, the ALJ properly concluded that whether plaintiff is disabled and unable to work is an issue reserved to the Commissioner. [AR 20]. See 20 C.F.R. §§ 404.1527(d)(1)-(3); 416.927(d)(1)-(3). The ALJ also properly rejected Dr. Kang's statement because it was unsupported by the objective medical evidence and did not contain any details regarding plaintiff's symptoms or functional limitations. [AR 20]. Although plaintiff concedes that Dr. Kang's statement failed "to specify symptoms or specific functional limitations," plaintiff maintains that "implicit in her note is a common sense interpretation that Dr. Kang was of the opinion that Plaintiff's upper extremities would pose a problem for her performing the work as a hairdresser due to her rheumatoid arthritis condition." [JS 6]. The ALJ, however, is free to reject a treating physician's opinion that is conclusory and unsupported by the medical evidence. See Tonapetyan, 242 F.3d at 1149 (holding that the ALJ properly rejected treating physician's opinion that was "conclusory and brief and unsupported by clinical findings"). Plaintiff also argues that Dr. Kang's opinion was entitled to significant weight because she specializes in rheumatology. [JS 6]. While a physician's area of expertise should be considered in determining the weight afforded to that medical opinion, it is only one of the factors considered and is not determinative. See 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6).

Moreover, the contrary opinion of Dr. Zaffarkhan constitutes substantial evidence supporting the ALJ's findings regarding plaintiff's functional limitations. Dr. Zaffarkhan's opinion about plaintiff's functional limitations was supported by his detailed findings resulting from a complete orthopedic examination of plaintiff. [See AR 216-221]. Plaintiff argues that Dr. Zaffarkhan's opinion is entitled to no weight because he did not review plaintiff's medical records. [JS 4-5]. That argument lacks merit. Dr. Zaffarkhan's "opinion alone constitutes substantial evidence, because it rests on his own independent examination of [plaintiff]." Tonapetyan, 242 F.3d at 1149 (citations omitted). [See AR 216-221]. The non-examining physicians' opinions constitute additional substantial evidence supporting the ALJ's RFC

assessment because they are consistent with Dr. Zaffarkhan's opinion and the objective medical evidence in the record. [See AR 223-229]. See Saelee, 94 F.3d at 522.

Accordingly, the ALJ provided legally sufficient reasons for her evaluation of the medical source opinions, and those reasons are supported by substantial evidence in the record.

**Credibility finding**

Plaintiff contends that the ALJ failed to properly consider plaintiff's testimony about her subjective symptoms. [JS 11-14].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a); 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, plaintiff testified that she is unable to work because she "drops things from [her] hands, [and doesn't] have any strength in them." [AR 31]. She also explained that she has a driver's license, but drives "[v]ery little" like to a doctor's appointment or "somewhere close." [AR 32]. Plaintiff described her "average day" as waking up slowly and then doing chores "little by little" including mopping, sweeping, and cleaning the bathroom. [AR 35]. Plaintiff stated that she can care for herself, but sometimes

needs help getting in and out of the bathtub. [AR 35]. Plaintiff further testified that her son helps her with the cooking and cleaning, but that she sometimes cooks dinner and does the dishes. [AR 36]. Plaintiff also goes to church, takes short walks, and does the grocery shopping with her husband. [AR 36-37]. According to plaintiff, she needs to take naps during the day because the pills for her arthritis make her sleepy. [AR 37-38]. Finally, plaintiff indicated that she has poor eyesight and trouble hearing. [AR 38].

The ALJ concluded that plaintiff's testimony about her subjective symptoms was not fully credible. [AR 18-19]. Specifically, the ALJ found that plaintiff retained the RFC to lift and carry ten pounds frequently and twenty pounds occasionally and also can perform frequent fine manipulation with both hands. [AR 17].

The ALJ provided clear and convincing reasons supporting her credibility finding. The ALJ found that plaintiff made inconsistent statements concerning her work history and disability status. [AR 18]. Plaintiff initially alleged that her disability began on October 1, 2006. [AR 18, 151]. Plaintiff subsequently alleged that she became unable to work due to her impairments on June 1, 2008, but on the same form she reported that she stopped working on June 1, 2007 due to "constant pain in [her] hands." [AR 18, 169]. During the hearing in August 2010, plaintiff testified that she stopped working on January 15, 2008, but then said that she last worked in August 2008.[3] [AR 18, 29-30]. The ALJ asked plaintiff about her earnings from 2009. Plaintiff testified that she had owned a beauty salon with two chairs, and that she rented one of the chairs to another hair stylist for six months in 2009. [AR 18, 29-31]. Asked why she stopped renting the chair, plaintiff testified that the other hair stylist "went to Mexico and then the business was low so since I couldn't handle it anymore I closed." [AR 18, 30-31]. The ALJ concluded that plaintiff's testimony showed that she engaged in substantial gainful activity through August 2009, and that plaintiff's inconsistent statements undermined the credibility of her subjective complaints. [AR 16, 18].

While plaintiff concedes that she offered inconsistent statements about the timing and duration of her work, she maintains that these statements "have nothing to do with her statements regarding her symptoms and limitations." [JS 11]. The ALJ, however, properly considered plaintiff's inconsistent statements as one factor in her credibility determination because the fact that plaintiff was not completely

---

[3] Plaintiff was represented during the hearing by her attorney of record in this case.

forthcoming and consistent in her statement regarding her work history and disability status is relevant to assessing her credibility in general. See Bunnell, 947 F.2d at 346 ("An adjudicator may also use ordinary techniques of credibility evaluation to test a claimant's credibility. So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence.") (internal quotation marks and citation omitted); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ can use "ordinary techniques of credibility evaluation"). Moreover, the ALJ noted that although plaintiff "reported she was unable to work in 2008 . . . evidence indicates the [plaintiff] worked in 2009 and the [plaintiff] only closed her shop after the person renting her chair moved to Mexico and business was slow." [AR 18]. See 20 C.F.R. §§ 404.1529(a) & (c)(3); 416.929(a) & (c)(3) (stating that the Commissioner will consider a claimant's efforts to work and prior work record in evaluating symptoms).

The ALJ also found that plaintiff's daily activities did not support a finding that her subjective symptoms were disabling. [AR 18]. In particular, the ALJ pointed to plaintiff's testimony that she can perform household chores, cook, do the dishes, and drive to doctor's appointments. [AR 18, 32-38]. Plaintiff's testimony about her daily activities was one factor the ALJ could consider, particularly in regard to whether plaintiff could use her hands frequently. [AR 18]. See Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (holding that the ALJ properly considered plaintiff's activities in rejecting the claimant's credibility where the record demonstrated that the claimant had greater capacity than he alleged).

Finally, the ALJ properly considered, as one factor among others in her credibility determination, the lack of objective medical evidence corroborating the alleged severity of plaintiff's subjective symptoms. [AR 19-20]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

The ALJ articulated clear and convincing reasons, based on substantial evidence, for rejecting the alleged severity of plaintiff's subjective complaints.

**Vocational expert testimony**

Plaintiff contends that the ALJ erred in relying on the vocational expert's testimony to support her

step four finding that plaintiff was capable of performing her past relevant work as a hairstylist and manager of a beauty salon. [JS 18-19].

A social security disability claimant bears the burden of proving that she cannot perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-62, 1982 WL 31386); see also Burch, 400 F.3d at 679; Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986). The ALJ's obligation is "to make the requisite factual findings to support" the conclusion that the claimant can perform past relevant work. "This is done by looking at the residual functional capacity and the physical and mental demands of the claimant's past work." Pinto, 249 F.3d at 844-845 (quoting 20 C.F.R. §§ 404.1520(e) and 416.920(e)). Information from the Dictionary of Occupational Titles ("DOT"), or the testimony of a vocational specialist, may be used to ascertain the demands of an occupation as ordinarily required by employers throughout the national economy at steps four and five of the sequential evaluation procedure. See SSR 00-4p, 2000 WL 1898704, at *2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy. We use these publications at steps 4 and 5 of the sequential evaluation process. We may also use VEs and VSs at these steps to resolve complex vocational issues.") (footnote omitted).

Plaintiff maintains that the ALJ erred in her step four finding because Dr. Kang's opinion established that plaintiff is unable to frequently use her upper extremities, and both of plaintiff's past relevant occupations require frequent reaching, handling, and fingering. [JS 19]. As discussed above, the ALJ's RFC assessment is supported by substantial evidence, and she permissibly rejected Dr. Kang's opinion. See Batson, 359 F.3d at 1197 (holding that "[t]he ALJ was not required to incorporate evidence from the opinions of [plaintiff]'s treating physicians, which were permissibly discounted.").

Plaintiff further argues that the ALJ erred in concluding that plaintiff's past work in a hair salon actually constituted two occupations, namely hairstylist and manager of a beauty salon. [JS 19]. Plaintiff's argument is without merit because, even assuming that her past work was incorrectly classified as manager of a beauty salon, plaintiff concedes that her past relevant work includes employment as a hairstylist. [See AR 29-31, 170]. The ALJ need only find plaintiff capable of performing one of her past jobs in order to

determine that plaintiff is not disabled at step four. Therefore, any error the ALJ made in classifying plaintiff's past work as including employment as a manager of a beauty salon was harmless error as to the ALJ's step four determination. See Burch, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.").

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

March 14, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge